## THE CROWN OF CASTILE.

(District Court, S. D. New York. December 6, 1906.)

ADMIRALTY—PRACTICE—EXTENSION OF RULE 59.

A vessel sued for nondelivery of cargo. all of which was received and loaded by the charterer, and for which bills of lading were signed by the master without prejudice under the terms of the charter, upon an allegation of delivery of all cargo received on board, is entitled by analogy to admiralty rule 59 to bring in the charterer, in order to determine in one action all the matters arising out of the loss.

In Admiralty. On exception to petition of claimant.

Convers & Kirlin, for claimant.
Whitridge, Butler & Rice, for American-Asiatic Steamship Co.

ADAMS, District Judge. This is an exception on the part of the American-Asiatic Steamship Company to the petition of the claimant of the steamship Crown of Castile to bring into the action the said Steamship Company. The claim of the libellant is for the value of 2 cases of rubber, which it is alleged were shipped on the steamer at New York on the 23rd of August, 1905, for delivery at Kobe, Japan, subject to the perils of the seas and other exceptions, for an agreed freight, which has been paid. It is alleged that the steamship proceeded to Kobe and delivered 3 of the 5 cases but negligently failed to deliver 2 of the cases and the libellant seeks to recover the value of the same. The claimant of the steamship subsequently filed the petition mentioned, in which it is alleged that a charter was executed between

the agents of the steamer and the American-Asiatic Company, which contained, among other things, these provisions, which are relied upon by the petitioner:

"10. The cargo to be received and delivered alongside. * * * Captain to report daily during loading at Charterers' office to sign Bills of Lading.
* * * * * * *

16. The Master, or person appointed by him, shall sign Bills of Lading as presented without prejudice to this charter, any differences between chartered and Bills of Lading freight being settled on sailing; if in Charterers' favor, by usual Captain's draft against freight, payable at sight on arrival at a port of discharge to be selected by Charterers; if in Steamer's favor, in cash, less cost of insurance; a sum of £200 to be withheld by Charterers until final settlement has been made at all ports of discharge for damage and shortage claims on account of steamer, but this amount not to be taken as a limitation of steamer's liability. The steamer to have an absolute lien upon the cargo for freight, dead freight and demurrage. Charterers' liability, except for any deficiency of Bill of Lading freight payable in cash, to cease on shipment of cargo, providing same is worth freight, dead freight and demurrage (if any)."

The charter also contained the following clause, which is relied upon by the charterer:

"13. Steamer and Owners to be held responsible for the number of packages signed for in Bills of Lading."

The petition alleges:

"Eighth: The claimant and petitioner had and has no knowledge of the exact quantity, contents or description of the cargo referred to in the bills of lading that were prepared by the charterers and signed by the master. All the cargo referred to in the libel herein that was actually loaded on board the vessel was delivered at the port of destination in accordance with the terms and provisions of the charter party and bills of lading that were issued therefor and that evidenced the contract under which the goods were carried.

Ninth: If any loss or damage occurred to any merchandise referred to in the libel herein and covered by the bill of lading issued therefor, such loss or damage occurred while the said merchandise was in the custody and control of the charterers, their agents, servants or representatives, and was within one or more exceptions in the bill of lading that was issued for the said merchandise, or was due to the negligence of the charterers, their agents, servants or representatives in the custody and care of the cargo, and was not due to any fault or negligence on the part of the petitioner or owners of the steamship, their servants or agents, or any one for whom they may have been responsible. If the libellant is entitled to any recovery against the steamship by reason of the matters set forth in the libel, the owners of the said vessel are entitled to be indemnified with respect to such liability by the charterers, the American-Asiatic Steamship Company."

The question in the matter is whether the claimant is entitled, under analogy to the 59th Rule, to bring in the charterer to indemnify the steamer in case it has to pay for the cases.

It is urged by the steamer that, under the contract, the charterer undertook the entire business of receiving the cargo and loading it upon the vessel, including the providing of a wharf and the employment of clerks and watchmen to look after the cargo; that all of the cargo that was delivered upon the wharf for shipment upon the vessel remained in the custody of the charterer until it was actually placed upon the vessel; that the charterer prepared bills of lading for the master

to sign and he signed them in accordance with section 16, supra, which provided that the master should sign bills of lading as presented.

It is alleged that the steamer actually delivered all the cargo that was loaded upon her and it stated that if the loss occurred, it was while the cargo was in possession of the charterer and not by reason of any default on the part of the vessel and that if the libellant was entitled to any recovery against the vessel, the owners would be entitled to indemnity with respect to such liability from the charterer through whose default the loss, if any, occurred.

The charterer, on the other hand, contends that the master of the vessel had an opportunity at the time the cargo was received to check it off and it was at his peril if he failed to ascertain the cargo actually received and for his negligence in this respect, the charterer is not in any way liable and therefore should not be brought into the action.

In view of the provisions of the contract, taken altogether, I think that while it would have been more prudent for the master to check off the packages as received and sign for only such as were put on board, as in The Tongoy (D. C.) 55 Fed. 329, nevertheless, it seems that the best way to adjust the matters arising out of the claimed deficiency of cargo, will be to have all the parties before the court on the trial. If the libellant establishes a case by the proof, and the petitioner's allegations are true, then doubtless the vessel was liable, with a right of action over against the charterer, if it was through the charterer's default that the loss occurred, and if the charterer is in the action, all the matters can be disposed of in one trial. It was to avoid a multiplicity of actions that the rule was established in collision cases, and has been extended by analogy to many other causes of action, of which it seems that this should be considered one.

Exception overruled.